# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DAVID WILLIAMS, JR., | 1:08-cv-01336 AWI DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MIKE MARTEL, Warden | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### BACKGROUND

Following a jury trial in the Tulare County Superior Court, Petitioner was convicted of one count of burglary. The court also found true three prior strike convictions. On August 11, 2006, Petitioner was sentenced to 25 years to life plus 5 years for a total term of 30 years to life in prison.

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District. On December 5, 2007, the Court of Appeal affirmed Petitioner's conviction and sentence. (Lodged Doc. No. 4.)

Petitioner did not file a petition for review in the California Supreme Court.

On October 4, 2006, Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court, which was denied on October 10, 2006. (Lodged Doc. Nos. 5, 6.)

1    On December 11, 2006, Petitioner filed a subsequent petition for writ of habeas corpus in
2 the Tulare County Superior Court, and it was denied on December 13, 2006. (Lodged Doc. Nos.
3 7, 8.)
4    On March 19, 2007, Petitioner filed a petition for writ of habeas corpus in the California
5 Court of Appeal, Fifth Appellate District. (Lodged Doc. No. 9.) The petition was denied on
6 March 23, 2007. (Lodged Doc. No. 10.)
7    On January 11, 2008, Petitioner petitioned the California Supreme Court for review.
8 (Lodged Doc. 11.) Review was denied on February 13, 2008. (Lodged Doc. 12.)
9    On February 4, 2008, Petitioner filed a petition for writ of habeas corpus in the California
10 Supreme Court, which was denied on July 30, 2008. (Lodged Doc. Nos. 13, 14.)
11    On July 15, 2008, Petitioner filed a second petition for review in the California Supreme
12 Court, and it was denied on August 20, 2008. (Lodged Doc. Nos. 15, 16.)
13    Petitioner filed the instant federal petition for writ of habeas corpus on September 9,
14 2008. (Court Doc. 1.) Respondent filed an answer to the petition on December 16, 2008, and
15 Petitioner filed a traverse on December 29, 2008. (Court Docs. 18, 22.)

16                                STATEMENT OF FACTS

17    Lance Ortega testified that on December 28, 2005, he left his home at about 5:00 a.m. and
18 did not return until approximately 6:30 p.m. (RT 23-24, 38, 40-41.) When he left his residence
19 he looked the front door, but it was open when he returned home that evening. (RT 42, 58.) Mr.
20 Ortega observed footprints on the toilet in the bathroom, and noticed that someone had entered
21 him home through the bathroom window. (RT 45.) He discovered that his fiancee's jewelry was
22 missing from the bedroom, along with $50 in change, a $2 bill, and a camera. (RT 62, 65.)
23    Porterville police officer, Dominic Barteau, testified that while investigating the burglary
24 of Ortega's home, he discovered a footprint on the window of the master bedroom bathroom, on
25 the toilet lid, and on the bathroom floor. (RT 24-25.)
26    Petitioner's daughter, Melissa Williams, lived across the street from Mr. Ortega's home.
27 On the day of the burglary, Melissa saw Petitioner who lived in a tent in her backyard. (RT 68,
28 70.) Petitioner showed her a see-through chain purse that contained a $2 bill, a necklace, and

1  other jewelry.  (RT 71, 76.)  When asked where he got the property, Petitioner stated that he "did
2  a little burglary" and confessed to her that he "robbed" Lance Ortega's house.  (RT 71-72.)
3  Petitioner left and Melissa spoke to the police that night and told them that Petitioner confessed
4  to the burglary.  (RT 72.)  Petitioner returned later but left again when Melissa informed him that
5  she spoke to the police.  (Id.)

6  On cross-examination, Melissa testified that although she loved her father she did not like
7  that he made her clean up after him and run errands.  (RT 73.)  She also acknowledged that her
8  boyfriend did not get along with Petitioner because he accused him of molesting Melissa's
9  daughter.  (RT 74.)

10  Petitioner did not testify or present any witnesses in support of his defense.

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to

determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.     Ineffective Assistance of Counsel

Petitioner argues that trial counsel was ineffective because (1) he failed to file a notice of appeal, (2) he refused to call any witnesses for the defense even though counsel was aware that the witnesses could establish that he was not home at the time Melissa Williams claims he was there, and she had a history of lying, and (3) he would not raise the issue of Petitioner's arrest in his home without a warrant. (Petition, at 4, 27-31.)

Petitioner raised these claims to the California Supreme Court in a state habeas corpus petition, which was denied the petition on the merits. (Lodged Doc. Nos. 13, 14.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive

defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

    1.    *Failure to File a Notice of Appeal*

Petitioner claims counsel was ineffective for failing to file a notice of appeal. (Petition, at 29.) This claim was presented to the California Supreme Court in a habeas corpus petition which was summarily denied. (Lodged Doc. Nos. 13, 14.)

Even if trial counsel did not file a notice of appeal, Petitioner, himself, filed a notice of appeal on October 30, 2006. The appeal was filed in the Fifth Appellate District on November 13, 2006, and counsel was appointed and his claims were reviewed on direct appeal. (1CT 124; see case no. F051625.) Thus, Petitioner had the opportunity to present claims on direct appeal to the California Court of Appeal. (Lodged Doc. No. 1.) In addition, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal and presented other challenges to his conviction. (Lodged Doc. No. 9.) Therefore, Petitioner has not shown any resulting prejudice or that but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, the California Supreme Court's denial of this claim was neither contrary to nor an unreasonable application of Strickland.

2.      *Failure to Call Witnesses, Challenge Evidence*

Petitioner contends counsel's failure to call any witnesses in his defense despite the fact he was aware the witness could prove that Petitioner was not home at the time Melissa Williams testified she spoke with him resulting in ineffective assistance. Petitioner further claims that the witnesses could also prove that Melissa Williams had a "history of lying on people she gets mad at." (Petition, at 29.)

Petitioner presented this claim to the California Court of Appeal and California Supreme Court in a habeas corpus petition which denied the claim on the merits. (Lodged Doc. Nos. 13, 14.) Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel). The absence of affidavits from uncalled witnesses puts a petitioner's claim at a disadvantage. Howard v. O'Sullivan, 185 F.3d 721, 724 (7th Cir. 1999) ("failure to submit supporting affidavits from [the] potential witnesses would severely hobble [the petitioner's] case.")

7

1    Petitioner's claim is completely conclusory.  Petitioner merely claims that trial counsel
2 refused to call any witnesses even though he knew the *unspecified* witnesses could further prove
3 that Melissa Williams "had a history of lying on people she gets mad at." (Petition, at 29.)
4 Petitioner fails to identify any potential witnesses, that they were willing to testify, or that their
5 testimony would have raised a reasonable doubt as to his guilt.  Petitioner's claims is nothing
6 more than vague speculation.  Without specifics and evidentiary support of those specifics,
7 Petitioner has not and likely cannot demonstrate ineffectiveness or prejudice.  Dows v. Wood,
8 211 F.3d 480, 486 (9th Cir. 2000).  Based on the foregoing, the state court rejection of Petitioner's
9 claim was not contrary to or an unreasonable application of Strickland. v. Washington. See 28
10 U.S.C. § 2254(d). The claim must be denied.

11    3.    *Warrantless Arrest*

12    Petitioner contends that trial counsel was ineffective for failing to challenge the fact that
13 he was arrested in his home without a warrant.  Petitioner further claims that defense counsel
14 "was working in collusion with the district attorney to insure a conviction in petitioner's case."
15 Id.  Petitioner concludes that the working relationship between his counsel, the district attorney
16 and judge resulted in a conspiracy to convict him.

17    Petitioner presented this claim to the California Supreme Court in a habeas corpus
18 petition which was summarily denied. (Lodged Doc. Nos. 13, 14.)  Petitioner also raised the
19 claim to the California Court of Appeal, Fifth Appellate District, which stated that he "failed to
20 provide an adequate factual and procedural context for the issues he raises. (*People v. Duvall*
21 (1995) 9 Cal.4th 464, 474.)" (Lodged Doc. No. 10.)  Under the "look through" doctrine, this
22 Court assumes the California Supreme Court adopted the Fifth Appellate District's reasoning.
23 Ylst v. Nunnemaker, 501 U.S. at 804-05 & n. 3.

24    Petitioner's claim is factually unsound.  At the time of his arrest, Petitioner resided in a
25 tent in the backyard of his daughter's home. (RT 31-32, 68, 70-71.)  Even if it is assumed that
26 Petitioner's arrest was somehow unlawful, Petitioner cannot establish ineffective assistance of
27 counsel or any resulting prejudice, as he fails to demonstrate that the police recovered any
28 information or evidence as a result of the alleged unlawful arrest.  In addition, there is no

8

indication that the prosecutor introduced any evidence at trial that was obtained as a result of the allegedly unlawful arrest. In fact, the officer who investigated the burglary went to the residence where Petitioner resided and was allowed to enter. (RT 31.) The officer then went to the backyard where Petitioner resided in the tent. (RT 32.) Nothing was seized from the tent, and Petitioner was not even there at the time. (RT 33, 72.) Petitioner's daughter, Melissa White, told the police that Petitioner told her that he "robbed Lance's house" and showed her a purse that contained a lot of change, some necklaces and other jewelry. (RT 71.) Petitioner was arrested at a later time. Because Petitioner has failed to point to any evidence that could have been subject to exclusion, there was no basis for counsel to file a motion to suppress and counsel cannot be faulted for failing to pursue a futile motion. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Jones v. Smith, 231 F.3d 1227, 1239 n.9 (2000).

Furthermore, Petitioner cites no evidentiary foundation for his assertion that the working relationship between his counsel, the district attorney, and trial judge resulted in a conspiracy to convict him. His claim is completely unfounded, and does not support a finding that counsel was ineffective or that he was prejudiced as a result.

Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of Strickland and his claims should be denied.

D.     Denial of Fair and Just Hearing

Petitioner contends that he was denied a fair and just hearing. More specifically, Petitioner contends that he was given conflict attorney James M. Kordell by Judge Ronn Couillard, and the two had previously worked together at the district attorney's office. (Petition, at 31-32.) Petitioner claims that on the day his trial was scheduled to start, Judge Couillard sent his case to Judge Darryl B. Ferguson, who in 2002 told him "not to come back in front of him again." (Petition, at 31.) Petitioner believes the re-assignment was done to insure that there would be a guilty finding in this case. (Id.) Petitioner further states that Judge Couillard and District Attorney Cline were reprimanded by an appellate court for withholding evidence in a case, which in and of itself supports the finding that he was not provided a fair and just hearing. (Petition, at 32.) Petitioner further indicates that during deliberations the jury sent a note to the

court requesting to see a copy of the police officer's report but there was no response to the question. (Id.) Petitioner provides three reasons for the jury's request. (Id.)

He further claims counsel was appointed on the 60th day of 60 days prior to the start of trial and the first thing he did was file a motion under California Penal Code section 1368 (doubt as to sanity) which suspended the criminal proceedings only because Petitioner would not waive his speedy trial rights. (Petition, at 31.)

Petitioner raised these claims in a habeas corpus petition presented to the California Supreme Court, which was denied. (Lodged Doc. Nos. 13, 14.) Petitioner raised this challenge regarding the Penal Code section 1368 motion to the Fifth Appellate District, which denied the claim stating, "Petitioner has failed to provide an adequate factual and procedural context for the issues he raises. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)" (Lodged Doc. No. 10.) The other challenges regarding the alleged inappropriate relationship between counsel and the court was raised only to the California Supreme Court, which issued a summary denial.

The instant claim of denial to a fair and just hearing is completely conclusory in nature. Although Petitioner contends that he was not provided a fair and just hearing because of an alleged conspiracy between counsel and the trial court, Petitioner does not provide any specifics regarding the alleged improper relationship that resulted in prejudice to him. Petitioner's claim is based on nothing more than pure speculation about an alleged conspiracy between defense counsel, the district attorney, and the trial court to convict him of a crime he claims he did not commit.

In addition, Petitioner fails to demonstrate that his attorney's motion under Penal Code section 1368 violated his right to a speedy trial and/or in any contributed to his conviction. Contrary to Petitioner's contention, the basis for counsel's section 1368 is clearly set forth in the record. At the time of presenting the 1368 motion, defense counsel informed the trial court that he had "serious doubts about the ability of the defendant as far as his mental competency is concerned to proceed today to trial." (RT 1.) The Department of Corrections file reflected that Petitioner was suffering from ADHD, Tourette Syndrome, Bipolar Disorder and was classified as a high suicide risk. (RT 2.) Counsel further stated, [t]his Court issued an order last week - - I

was present - - to the sheriff to make sure he gets his medication.  Well, he was told we don't give that kind of medication here and I don't know if he needs to be moved to another jail.  He's getting worse.  He's decompensating.  It's probably with the medications he's taking.  We need at least a month or two to get up to par and stabilized.  (Id.)  Thus, it is apparent from the record that counsel made a reasonable decision to pursue a section 1368 motion.  Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

E.      Arrest Without Warrant

As previously stated in the context of an ineffective assistance of counsel claim, Petitioner contends that he was unlawfully arrested without a warrant.  Petitioner specifically contends that "the arrest should never have taken place and the petitioner's Constitutional rights should not have been Violated[.]" (Petition, at 32.)  He further alleges "[t]here is no question that Officer D. Barteau, did willfully and knowingly come to petitioner's home to violate his Constitutional Rights and make a illegal arrest, and should be held accountable for the illegal arrest which lead to a wrongful Conviction of a innocent Man." (Petition, at 32-33.)

Petitioner raised this claim to the Fifth Appellate District and California Supreme Court, and because there is no reasoned decision by the Supreme Court, this Court must look through to the last reasoned decision of the appellate court.  In denying Petitioner's claim, the Fifth Appellate District stated, "Petitioner has failed to provide an adequate factual and procedural context for the issues he raises.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)" (Lodged Doc. No. 10.)

As with the claim that counsel was ineffective for failing to challenge Petitioner's arrest without a warrant, Petitioner again presents only general statements that he should not have been arrested in his home without a warrant, but fails to provide any specific factual or legal argument to show how his constitutional rights were violated by the arrest.  Accordingly, as previously stated, this claim is too conclusory to warrant habeas corpus relief, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  28 U.S.C. § 2254(d).

1  F.     Insufficient Evidence

Petitioner contends that there was insufficient evidence to support his conviction of burglary. (Petition, at 33-36.) Petitioner raised this claim to the Fifth Appellate District and California Supreme Court. (Lodged Doc. Nos. 9, 10, 13, 14.) Because the California Supreme Court issued a summary denial, this Court looks through that decision to the last reasoned decision of the Fifth Appellate District which stated that Petitioner failed to provide an adequate factual and procedural context for the issues he raised. (Lodged Doc. 10.)

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16. On habeas review, the Ninth Circuit has concluded that "[a]fter AEDPA, we apply the standards of *Jackson* with an additional layer of deference." Juan H. Allen, 408 F.3d 1262, 1274 (2005).

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for any rational trier of fact to find beyond a reasonable doubt that Petitioner committed the burglary of Lance Ortega's residence. Lance Ortega testified that on December 28, 2005, he left his home at about 5:00 a.m. and did not return until approximately 6:30 p.m. (RT 23-24, 38, 40-41.) When he left his residence he locked the front door, but it was open when he returned home that evening. (RT 42, 58.) Mr. Ortega observed footprints on the toilet in the bathroom, and noticed that someone had entered him home through the bathroom window. (RT 45.) He discovered that his fiancee's jewelry was missing from the bedroom, along with $50 in change, a $2 bill, and a camera. (RT 62, 65.)

Petitioner's daughter, Melissa Williams, lived across the street from Mr. Ortega's home. On the day of the burglary, Melissa saw Petitioner who lived in a tent in her backyard. (RT 68, 70.) Petitioner showed her a see-through chain purse that contained a $2 bill, a necklace, and some jewelry. (RT 71, 76.) When asked where he got the property, Petitioner indicated that he

"did a little burglary" and confessed to her that he "robbed" Lance Ortega's house. (RT 71-72.) Melissa spoke to the police that night and told him what Petitioner told her. (RT 72.) When Melissa informed Petitioner that she spoke to the police, he "took off." (Id.)

Petitioner contends that the evidence was insufficient to convict him of burglary because the only evidence was from his daughter, who was on medication at the time and her description of the burglary was incorrect. (Petition, at 33.) Petitioner further claims the entire case was based exclusively on hearsay evidence. (Petition, at 34-35.) However, it is not the province of this Court to second-guess the jury's finding or to re-weigh the evidence. In order for a witness's testimony to be disbelieved, the testimony must be incredible as a matter of law or unbelievable on its face. "In other words, it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." U.S. v. Harty, 930 F.2d 1257, 1266 (7th Cir. 1991). Petitioner fails to demonstrate his daughter's testimony that he confessed to the burglary was physically impossible or unbelievable on its face. Accordingly, the evidence viewed in the light most favorable to the prosecution, supports the jury's finding that the evidence demonstrated he was guilty of burglary.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

1  636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time
2  may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th
3  Cir. 1991).
4       IT IS SO ORDERED.
5    **Dated:   February 19, 2009**              **/s/ Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE